## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge William J. Martínez

Civil Action No. 13-cv-1890-WJM

ANITA RIVERA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security

    Defendant.

---

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION

---

This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Anita Rivera ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income benefits and disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ") who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security benefits is AFFIRMED.

## I. BACKGROUND

Plaintiff was born on December 17, 1961 and was 45 years old on the alleged disability onset date. (Admin Records ("R") (ECF No. 10) at 71.) Plaintiff has a 10th grade education (*Id.*), and has prior work experience as an order picker, housekeeper, and office helper (R. at 264).

Plaintiff filed an application for supplemental security income and an application for disability insurance benefits on June 23, 2010.[1] (ECF No. 11.) The applications were denied on January 28, 2011 and, upon a request for a hearing, Plaintiff's claims were heard by ALJ Jon. L. Lawritson on July 9, 2012. (*Id.*) Plaintiff and vocational expert Pat Pauline testified at the hearing. (*Id.*)

On July 16, 2012, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2] (R. at 11-23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2007. (R. at 14.) At step two, he found that Plaintiff suffered from the severe impairments of "panic disorder, post-traumatic stress disorder, depression, alcohol abuse, marijuana abuse, headaches, asthma, hypothyroidism, coronary artery disease, and status-post pulmonary embolism[.]" (R. at 15.) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments listed in the social security regulations. (*Id.*) The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the RFC to perform "light

---

[1] There is an inconsistency regarding the date Plaintiff filed her application for benefits. Although many of the record documents state that Plaintiff filed her application on June 23, 2010 (R. at 71, 72, 85), the applications themselves show the application date as July 23, 2010 (R. at 161, 165). Because the ALJ's decision uses the June 23, 2010 date, and the filing date is immaterial to the Court's analysis, the Court will do the same.

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

exertional work" as defined by the regulations. (*Id.*) The ALJ also found that Plaintiff "can lift and carry up to 20 pounds. She can sit 2 hours, stand 3 hours, or walk 30 minutes at one time each. She can understand, remember, and carry out simple instructions. She can occasionally interact with supervisors and co-workers. She should have no contact with the public." (*Id.*) Given this RFC, at step four the ALJ found that Plaintiff was capable of performing past relevant work as a housekeeper and office helper. (R. at 23.) At step five, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found that Plaintiff could work as an order picker, housekeeper, or office helper. (*Id.*)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (*Id.*) The Appeals Council denied Plaintiff's request for review. (R. at 1.) Thus, the ALJ's July 16, 2012 decision is the final administrative action for purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may

neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, Plaintiff argues that the ALJ failed to properly weigh the physicians' medical opinions, and that the vocational expert was not apprised of all of Plaintiff's work-related functional limitations. (ECF No. 17 at 15, 20.) The Court will address each of Plaintiff's arguments in turn.

### A.   Weighing of Medical Opinions

Plaintiff contends that the ALJ erred in giving more weight to Plaintiff's non-examining physicians' opinion than he did to the examining physician's opinion and another medical opinion. (*Id.* at 15-20.) "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Id.* (citing 20 C.F.R. § 416.927(e)(2)(ii))[3]. In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors", which are listed in 20 C.F.R. § 404.1527(c). *See id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

---

[3] At the time of the *Hamlin* decision, 20 C.F.R. § 416.927(e) was codified as 20 C.F.R. § 416.927(f).

    and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted).

  The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins* , 350 F.3d at 1301(quotation marks and brackets omitted).

  The Court will discuss the ALJ's weighing of Plaintiff's physicians' opinions in turn below.

  1. <u>Dr. Lewy</u>

  The ALJ gave "greater weight" to Dr. Lewy, a State agency psychologist who completed an RFC assessment, than Dr. Kutz, a consultative examiner (R. at 21). Dr. Lewy found that Plaintiff had no more than moderate mental limitations, and that she could understand and remember instructions and procedures for basic tasks and familiar detailed work, could complete predictable tasks, and cope with usual workplace hassles, stresses, and changes. (R. at 79-81.) The ALJ also gave Dr. Lewy's opinion the "greatest weight" because it was consistent with the overall evidence of record. (R. at 21.)

  The Court finds that the ALJ applied the correct legal standard and considered most of the factors required by the regulations, including Dr. Lewy's speciality, and how his opinion is consistent with and supported by the record evidence. *See* 20 C.F.R. §§

404.1527, 416.927. The Record shows that Plaintiff did not stop working due to any mental impairment–she stopped working because the contract term on her temporary job ended. (R. at 197.) The Record also shows that Plaintiff did not had any extensive or on-going mental health treatment. For instance, Plaintiff did not initially seek treatment of complain about her anxiety until February 2009, three years after the alleged disability onset date. (R. at 326.) Plaintiff did not seek treatment or complain about her anxiety to a medical professional until April 2010, over one year later. (R. at 282.) Additionally, Plaintiff's depression was listed as "stable" in October 2010. (R. at 366.)

As there is sufficient evidence in the medical records to support Dr. Lewy's opinion, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place. *See Salazar*, 468 F.3d at 621.

    2.   <u>Dr. Kutz</u>

The ALJ stated that he was giving Dr. Kutz's opinion less weight than Dr. Lewy's because Dr. Kutz did not have a treating relationship with Plaintiff, having only examined her once, and because Dr. Kutz did not review her medical records. (R. at 21.) The Record supports this finding. Dr. Kutz only reviewed two available records (a Behavioral Health Progress Note, dated May 14, 2010, and a medical note from Salud Family Health Centers, dated May 21, 2010) (R. at 357), while Dr. Lewy reviewed the entire record available to him through January 28, 2011 (R. at 73-74). The ALJ noted that, because Dr. Kutz did not review Plaintiff's past medical records, he relied, at least in part, on Plaintiff's "presentations and complaints," which the ALJ found not to be credible. (R. at 21.)

The ALJ accepted the diagnoses of Dr. Kutz, but found that the severity of limitations Dr. Kutz found were "inconsistent with the weight of the evidence," including the evidence that Plaintiff smoked marijuana daily.  (*Id.*)  The Record shows Dr. Kutz did not evaluate Plaintiff's marijuana use (*see* R. 354-59), even though it is possible that Plaintiff's ability to concentrate and symptoms of anxiety could have been affected by her use of marijuana.  *See* Univ. of Maryland, Center for Substance Abuse Research (CESAR), Marijuana, available at http://www.cesar.umd.edu/cesar/drugs/marijuana.asp (last visited Oct. 24, 2012) ("While some users [of marijuana] may experience lowered inhibitions, drowsiness, and contentment, others may feel great anxiety and paranoia."). Thus, the Court finds that the ALJ applied the correct legal standard in weighing Dr. Kutz's opinion.  *See Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (finding that the ALJ's refusal to credit a doctor's opinion was supported by substantial evidence where the doctor did not have a treating relationship with the plaintiff, he based his opinion on a single, subjective report given to him by the claimant, and his opinion was not supported by the evidence of record).

3.     Mr. Diaz

The ALJ also gave "little weight" to a gentleman he refers to as Dr. Diaz.  (R. at 21.)  The Record, however, shows that Mr. Diaz was a social worker, and not a doctor.[4] (*See* R. at 528-29).  An opinion provided by a clinical social worker is not entitled to the same deference as an opinion by a physician, because it is not an "acceptable medical source."  *See* 20 C.F.R. § 416.913(d)(1); Social Security Ruling ("SSR") 06-03p, 2006

---

[4] Although Plaintiff testified that Luis Diaz was her therapist (R. at 54-55), the Record shows that he is a social worker at the Salud Family Health Centers (*see* R. at 528-29).

7

WL 2329939, at *2 (Aug. 9, 2006) (explaining that "other sources" include licensed clinical social workers). Only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *Weaver v. Astrue*, 353 F. App'x 151, 155 (10th Cir. 2009) (citing SSR 06–03p). The ALJ, therefore, did not err in finding that Mr. Diaz was "not an acceptable medical source," and giving his opinion little weight.

    4.    <u>Conclusion</u>

Overall, the Court concludes that the ALJ applied the correct legal standards, properly weighed all medical opinions, and adequately considered the non-medical sources. Plaintiff asks the Court to reweigh the evidence and arrive at a different conclusion, which the Court cannot do. *See Salazar*, 468 F.3d at 621. As such, Plaintiff has failed to show that the ALJ erred in considering the medical evidence or that any such error warrants remand.

**B.**    **Plaintiff's Work-related Functional Limitations**

Plaintiff argues that the "vocational expert was not apprised of all of [Plaintiff's] functional limitations." (ECF No. 17 at 20.) Although Plaintiff does not elaborate on which functional limitations were omitted, the Court presumes that she is referring to the limitations contained in Dr. Kutz and Mr. Diaz's opinions, but not included in the ALJ's RFC or the hypothetical question posed to the vocational expert.

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the

hypothetical inquiries to the expert. *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ, however, is required to accept and include in the hypothetical question only those limitations supported by the record. *Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999). As described above, the ALJ's decision to reject the opinions of Dr. Kutz and Mr. Diaz was supported by substantial evidence. Thus, the ALJ was not required to include the restrictions identified by Dr. Kutz and Mr. Diaz in his hypothetical question posed to the vocational expert. Because the ALJ included in his hypothetical question all of the limitations supported by the record, the vocational expert's testimony elicited by that hypothetical question provided substantial evidence to support the denial of disability benefits and supplemental security income payments to Plaintiff. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

In sum, having carefully reviewed the record in this case and having considered Plaintiff's argument in light of the record, the Court concludes that substantial evidence supports the ALJ's decision to deny Plaintiff's application for disability benefits and supplemental security income benefits, and that no deviation from established legal standards occurred.

## IV. CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits. The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 28th day of October, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge